# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SHAMRA HIBBERT,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>*Acting Commissioner of Social Security*,<br><br>    Defendant. | **MEMORANDUM DECISION**<br><br>Case No. 2:13-cv-00172-DBP<br><br>Magistrate Judge Dustin Pead |

## I. INTRODUCTION

The parties consented to this Court's jurisdiction under 28 U.S.C. § 636(c). (Docket No. 6.) Plaintiff appeals the Social Security Commissioner's decision that denied her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). (Dkt. No. 3.) After considering the parties' briefs, the administrative record, and the relevant law, the Court **AFFIRMS** the Commissioner's decision.

## II. PROCEDURAL HISTORY

On March 23, 2010, Plaintiff protectively filed a DIB application. (Tr. 131-43.) She alleged December 12, 2009 as her disability onset date. (*Id.* 131.) On July 22, 2010, the Commissioner initially denied the application. (*Id.* 62-64, 71-77.) On September 28, 2010, the Commissioner denied it upon reconsideration. (*Id.* 65-66, 79-84.) On October 26, 2011, Plaintiff received a

hearing before an administrative law judge ("ALJ"). (Tr. 35-61.) On December 1, 2011, the ALJ issued a decision declining to find Plaintiff disabled. (*Id.* 21-34.) On February 1, 2013, the Appeals Council denied Plaintiff's request for review. (*Id.* 1-4.) This denial made the ALJ's decision the Commissioner's final decision for appeal purposes. 20 C.F.R. § 404.981.

### III.   STATEMENT OF RELEVANT LAW

#### A.  Definition of Disability Under the Act

The Act states that an individual is disabled "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last or be expected to last for twelve months. *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

#### B.  Process for Determining Disability Under the Act

To determine disability, social security regulations set forth a five-step sequential evaluation process. The adjudicator considers whether a claimant: (1) engaged in substantial gainful activity during the alleged disability period, (2) has a severe impairment, (3) has a severe impairment that meets or medically equals a listed impairment, (4) could return to his past relevant work, and if not (5) could perform other work. 20 C.F.R. § 404.1520(a)(4).

### IV.   ALJ DECISION

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 15, 2009. (Tr. 23.) At step two, the ALJ found Plaintiff suffered the following severe impairments: (1) lumbar facet irritation, (2) mood disorder, (3) anxiety disorder, and (4) borderline personality disorder. (*Id.*) At step three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listed impairment. (*Id.* 24-25.)

Between steps three and four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to "perform light work" with additional limitations. (Tr. 25.) Regarding additional physical limitations, the ALJ concluded that Plaintiff could occasionally kneel and crouch. (*Id.*) She could occasionally climb ramps, stairs, ladders, ropes, and scaffolds. (*Id.*) Plaintiff could frequently balance, stoop, and crawl. (*Id.*) She could frequently push/pull with lower extremities. (*Id.*)

Regarding additional mental limitations, Plaintiff faced "[m]oderate limitations (1/3 or less overall restriction) understanding, remembering, and carrying out detailed instructions, and accepting instructions and responding appropriately to criticism from supervisors . . . ." (Tr. 25.) Plaintiff faced "[m]ild limitations (10% or less overall restriction) maintaining attention and concentration for extended periods, interacting appropriately with the public, getting along with co-workers, maintaining socially appropriate behavior and standards of neatness and cleanliness, and setting realistic goals or making plans independently of others." (*Id.*)

At step four, the ALJ concluded that Plaintiff could perform past relevant work as a cashier and a sales attendant because such work did "not require the performance of work-related activities precluded by" Plaintiff's RFC. (Tr. 31.)

"For the sake of completeness, and in the alternative," the ALJ performed a step five analysis. (*Id.* 32.) Based on vocational expert ("VE") testimony, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national or regional economy such as mail clerk and touch-up screener. (*Id.* 33.)

V.    STANDARD OF REVIEW ON APPEAL

A district court reviews the Commissioner's decision to determine whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the

correct legal standards. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks omitted). The court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.*

VI. **PLAINTIFF'S APPEAL**

On appeal, Plaintiff asserts three errors requiring remand. (Dkt. No. 16.) First, the ALJ failed to properly evaluate medical opinion evidence. Second, the ALJ failed to include all established impairments in Plaintiff's RFC. Third, the ALJ erroneously found Plaintiff not credible.

**A. Whether ALJ Erred by Failing to Properly Evaluate Treating Physician Opinion**

Dr. Michael Curtis acted as Plaintiff's treating physician from September 2008 through at least February 2010. (Tr. 269-83.) In May 2010, Curtis completed a mental capacity assessment for Plaintiff as well as an RFC questionnaire. (*Id.* 330-36.) In assessing Plaintiff's RFC, the ALJ gave "little weight" to Curtis's opinions. (*Id.* 30.)

*i.  Physical Limitations*

In the RFC questionnaire, Curtis identified Plaintiff's physical symptoms as migraines, back pain, bulging discs, fatigue, and joint pain in the legs/hips. (Tr. 334.) Curtis also identified the following side effects from Plaintiff's medications: clumsiness, unsteadiness, fever, chills, loss of appetite, mental/mood changes, drowsiness, upset stomach, dizziness, nausea, vomiting, and light-headedness. (*Id.*)

Curtis opined these symptoms and side effects would often interfere with the attention and concentration required to perform simple work-related tasks. (*Id.*) He also stated that Plaintiff could only sit and stand twenty minutes at one time and for no more than three hours total in an

correct legal standards. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks omitted). The court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.*

VI. **PLAINTIFF'S APPEAL**

On appeal, Plaintiff asserts three errors requiring remand. (Dkt. No. 16.) First, the ALJ failed to properly evaluate medical opinion evidence. Second, the ALJ failed to include all established impairments in Plaintiff's RFC. Third, the ALJ erroneously found Plaintiff not credible.

**A. Whether ALJ Erred by Failing to Properly Evaluate Treating Physician Opinion**

Dr. Michael Curtis acted as Plaintiff's treating physician from September 2008 through at least February 2010. (Tr. 269-83.) In May 2010, Curtis completed a mental capacity assessment for Plaintiff as well as an RFC questionnaire. (*Id.* 330-36.) In assessing Plaintiff's RFC, the ALJ gave "little weight" to Curtis's opinions. (*Id.* 30.)

*i.  Physical Limitations*

In the RFC questionnaire, Curtis identified Plaintiff's physical symptoms as migraines, back pain, bulging discs, fatigue, and joint pain in the legs/hips. (Tr. 334.) Curtis also identified the following side effects from Plaintiff's medications: clumsiness, unsteadiness, fever, chills, loss of appetite, mental/mood changes, drowsiness, upset stomach, dizziness, nausea, vomiting, and light-headedness. (*Id.*)

Curtis opined these symptoms and side effects would often interfere with the attention and concentration required to perform simple work-related tasks. (*Id.*) He also stated that Plaintiff could only sit and stand twenty minutes at one time and for no more than three hours total in an

eight-hour workday. (Tr. 334.) Curtis believed that Plaintiff would need unscheduled twenty-minute breaks every thirty minutes. (*Id.*) Curtis further opined Plaintiff could only walk two city blocks. (*Id.*)

The ALJ gave little weight to Curtis's physical assessment because "no objective tests or records . . . actually form[ed] a basis for his restrictive opinions." (*Id.* 30.) On appeal, Plaintiff argues the ALJ erred because "the record [] contains evidence that supports Dr. Curtis's opinions." (Dkt. No. 16 at 12.) For example, the record shows that Plaintiff suffered chronic back pain from bulging discs at the L3-L4, a possible annular tear at the T2, potential irritation at the L3 nerve root, and a right leg that gave out and caused Plaintiff to fall (Tr. 315, 319, 498, 508, 517). (Dkt. No. 16 at 12.)

The Commissioner opposes Plaintiff's appeal because the ALJ "gave specific, legitimate reasons" for assigning Curtis's opinion little weight. (Dkt. No. 17 at 12.) *See Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) ("An ALJ may decline to give controlling weight to the opinion of a treating physician where he articulates specific, legitimate reasons for his decision . . . .") (internal quotation marks and citation omitted).

This Court agrees with the Commissioner. In assigning Curtis's physical assessment little weight, the ALJ specifically noted that Curtis only examined Plaintiff "for a portion of the period at issue . . . ." (Tr. 30.) In fact, Curtis only examined Plaintiff five times from September 2008 through February 2010, and only one of these examinations occurred after Plaintiff's alleged disability onset date. (*Id.* 269-283.) *See* 20 C.F.R. § 404.1527(c)(2)(i) (noting that the Commissioner considers the "[l]ength of the treatment relationship and the frequency of examination" when weighing physician's opinion).

Additionally, substantial evidence supports the ALJ's conclusion that no objective records formed the basis for Curtis's physical assessment. For instance, Curtis's own treatment notes fail to support his restrictive physical assessment. His treatment notes only indicate that Plaintiff experienced spine tenderness with a normal neck range of motion and a normal gait. (Tr. 277, 282.)

Moreover, while the medical records cited by Plaintiff support her back pain complaints due to bulging discs (*id.* 315, 319, 498, 508, 517), the records that existed when Curtis completed his assessment do not mention extreme restrictions on Plaintiff's ability to walk, sit, and stand. At best, medical records created one year after Curtis's assessment include Plaintiff' subjective complaint that she could not "stand for long periods of time" (Tr. 508) and a medical instruction that Plaintiff use a cane "when needed for walking" (Tr. 511). Because these latter "records did not exist at the time of [Curtis's] opinion," they "were not the basis for his opinion." (Dkt. No. 17 at 14-15.)

### ii. *Mental Limitations*

In his mental capacity assessment, Curtis identified Plaintiff's diagnosis as major depressive disorder, bipolar disorder, slight personality disorder, migraines, lower back pain, and bulging discs. (Tr. 330.) Curtis opined that such a diagnosis would extremely limit Plaintiff in the following areas: (1) completing a normal workday and workweek without interruptions from psychologically based symptoms, (2) performing at a consistent pace with a standard number and length of rest periods, (3) interacting appropriately with the general public, and (4) traveling in unfamiliar places or using public transportation. (*Id.* 331-32.) Curtis believed that Plaintiff would have more than four absences a month. (*Id.* 331.)

The ALJ gave little weight to Curtis's mental assessment because his "extreme limitations [were] not supported by the mental health treatment records, and there [was] little evidence that he actually treated [Plaintiff] for mental impairments." (Tr. 30.) Moreover, Curtis's "specialty appear[ed] to be mainly physical, which significantly weaken[ed] any opinions he ha[d] regarding [Plaintiff's] mental functional capacity." (*Id.*)

On appeal, Plaintiff argues the ALJ erred when she discounted Curtis's opinion merely because Curtis did not specialize in mental health. (Dkt. No. 16 at 10.) "[A]s a board certified family practitioner, Dr. Curtis would have the background to comment on [Plaintiff's] mental impairments . . . ." (*Id.* at 6.)

This Court acknowledges that Curtis could competently comment on Plaintiff's mental health. However, the Court does not believe the ALJ erred in assigning Curtis's mental assessment less weight where he was not a mental health specialist and the ALJ provided other reasons for her assignment. *See* 20 C.F.R. § 404.1527(c)(2)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). *See also Branum v. Barnhart*, 385 F.3d 1268, 1276 (10th Cir. 2004) (concluding that ALJ reasonably discounted opinion where, among other things, doctor was not a specialist).

Plaintiff also argues that the ALJ erred when stating there was "little evidence" that Curtis treated Plaintiff for mental impairments. Plaintiff asserts that Curtis's treatment "notes show diagnoses of mental health issues including depression and anxiety, as well as, prescriptions for those impairments" (Tr. 271-72, 275, 278-83). (Dkt. No. 18 at 2.)

The Court acknowledges that Curtis's treatment notes reflect Plaintiff's mental health diagnoses and prescriptions. However, the treatment notes also reflect that Plaintiff never

complained to Curtis about mental health problems (Tr. 269-83). (Dkt. No. 17 at 12.) In fact, "in stark contrast to his" restrictive assessment, Curtis's treatment notes "uniformly noted normal mood, appropriate affect, and intact judgment and insight" (Tr. 271, 274, 277, 280). (Dkt. No. 17 at 13.)

Given these circumstances, substantial evidence supports the ALJ's conclusion that there was little evidence that Curtis treated Plaintiff's mental impairments. *See White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2001) (concluding that discrepancy between physician's very restrictive functional assessment and physician's examination notes was a legitimate reason for disregarding physician's opinion).

Plaintiff further argues that substantial evidence does not support the ALJ's decision to discount Curtis's mental health assessment because Plaintiff's other mental health providers offered similar assessments. (Dkt. No. 16 at 6-7.) For instance, prior to her alleged onset date, Plaintiff met with Dr. Broadwell and Dr. Alldredge. They assigned Plaintiff a GAF score of 45, indicating severe impairment (Tr. 345), and opined that Plaintiff could not work twenty-three hours per week (*id.* 347). (Dkt. No. 16 at 11.) After her alleged onset date, Plaintiff met with counselor Mortenson, who opined that Plaintiff suffered marked limitations in carrying out detailed instructions, completing a normal workweek, and interacting with coworkers and the public (Tr. 597-99). (Dkt. No. 16 at 11.)

The Court concludes that these other mental health assessments do not show that the ALJ's decision to discount Curtis's mental health assessment lacked substantial evidence. Broadwell's and Alldredge's mental health assessment predates Plaintiff's alleged disability onset date. The GAF score of 45 they assigned to Plaintiff in 2009 (Tr. 345) improved in 2010 to the 52-60 range (Tr. 368-73, 439-45), which indicates only moderate limitations. (Dkt. 17 at 14.) Moreover, the

ALJ refused to treat Mortenson's opinion as an acceptable medical source and gave it little weight because Mortensen based the opinion mostly on Plaintiff' subjective complaints (Tr. 30). (Dkt. No. 17 at 14.)

**B. Whether ALJ Erred by Failing to Include all Established Impairments in RFC**

On appeal, Plaintiff argues the ALJ erred when assessing Plaintiff's RFC because the ALJ failed to consider Plaintiff's "obesity, medication side-effects, and migraine headaches . . . ." (Dkt. No. 16 at 13.) For the reasons analyzed below, this Court **AFFIRMS** the Commissioner's decision on these issues.

*i.     Obesity*

The record confirms Plaintiff's obesity (Tr. 306, 352, 536, 552). (Dkt. No. 16 at 14.) A state agency physician suggested that Plaintiff's RFC should accommodate for obesity (Tr. 378). (Dkt. No. 16 at 14.) In light of this evidence, Plaintiff believes the ALJ erred by failing to discuss Plaintiff's obesity. Plaintiff emphasizes that,"[w]ithout findings from the ALJ as to [Plaintiff's] obesity, and how it impacts her RFC, we cannot know what limitations, if any, were included in the RFC assessment to account for [her] obesity." (Dkt. No. 18 at 6.)

The Commissioner opposes Plaintiff's appeal because Plaintiff, who was represented by counsel before the Social Security Administration, "did not allege she was disabled due to obesity when she applied for benefits (Tr. 166, 195, 199, 204), and she did not testify that her weight imposed any limitations (Tr. 49-56)." (Dkt. No. 17 at 17.) *See Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.").

This Court agrees with the Commissioner's reasoning. The ALJ did not commit reversible error by failing to discuss Plaintiff's obesity where Plaintiff never asserted her obesity affected her ability to work. *See Fagan v. Astrue*, No. 06-6261, 2007 WL 1895596, at *2 (10th Cir. July 3, 2007) (unpublished) (refusing to remand where ALJ neglected to discuss claimant's obesity because claimant "failed to do more than suggest that the ALJ should have speculated about the impact her obesity may have on her other impairments . . . ."); *Fields v. Barnhart*, No. 03-7031, 2003 WL 23033905, at *2 (10th Cir. Dec. 30, 2003) (unpublished) (rejecting argument "that the ALJ failed to adequately consider [claimant's] obesity and its impact on her other ailments" because claimant "fail[ed] . . . to cite any specific record evidence to show that [her obesity] in any way affect[ed] her ability to engage in basic work activities.") (internal quotation marks omitted).

## ii.   *Medication Side Effects*

Curtis's RFC questionnaire confirms that Plaintiff suffered medication side effects such as clumsiness, mental or mood changes, nausea, drowsiness, and dizziness (Tr. 334). (Dkt. No. 16 at 13.) Plaintiff's therapy records also allude to these side effects because they indicate Plaintiff experienced sleepiness and difficulty concentrating (Tr. 560-61). (Dkt. No. 16 at 13.) Plaintiff believes the ALJ erred by failing to discuss these side effects in Plaintiff's RFC assessment. (*Id.* at 14.)

The Commissioner opposes Plaintiff's appeal as meritless and this Court agrees. (Dkt. No. 17 at 16.) The ALJ clearly stated she would consider "side effects of any medications" in analyzing Plaintiff's credibility. (Tr. 28.) However, where the only direct evidence about medication side effects came from Curtis's discounted RFC questionnaire, substantial evidence supports the ALJ's decision not to discuss this evidence. Indeed, Plaintiff never reported

medication side effects to Curtis.  (*Id.* 269-83.)  In fact, she never reported medication side effects to three other doctors she saw.  (*Id.* 417-23, 486-503, 505-11, 534-49).  She never testified about medication side effects at her administrative hearing.  (*Id.* 49-56.)

   *iii.   Migraines*

In assessing Plaintiff's RFC, the ALJ acknowledged that Plaintiff suffered "worsening migraine headaches in February 2010," but noted "an MRI of her brain was normal."  (Tr. 26.)  On appeal, Plaintiff argues the ALJ failed to "satisfy" her "duty to consider" Plaintiff's migraines because "[o]ften migraine headaches are present even with normal brain MRIs."  (Dkt. No. 16 at 15.)  Where the record contains evidence that Plaintiff consistently suffered migraines (Tr. 246, 262, 266, 279, 285, 295, 492, 500, 524), the ALJ should have "explain[ed] why she [did] not find that [Plaintiff's] migraines cause[d] functional limitations . . . ."  (Dkt. No. 18 at 7.)

The Commissioner opposes Plaintiff's appeal because "the ALJ explicitly discussed Plaintiff's migraine headaches (Tr. 26)" and Plaintiff points "to no evidence demonstrating that her headaches would impose any work-related limitations, let alone that they impose more significant work-related limitations than those found by the ALJ."  (Dkt. No. 17 at 18.)  Indeed, at her administrative hearing, Plaintiff never testified about her migraines.  (Tr. 49-57.)

This Court may have weighed the migraine evidence differently.  However, substantial evidence supports the ALJ's consideration of Plaintiff's migraines.  The ALJ acknowledged the migraines but noted a normal brain MRI (Tr. 285), and Plaintiff never presented evidence about additional limitations caused by her migraines.

   **C.  Whether ALJ Erred in Finding Plaintiff Not Credible**

In assessing Plaintiff's RFC, the ALJ found Plaintiff lacked full credibility.  (Tr. 28.)  The ALJ concluded that Plaintiff's allegations about her physical and mental impairments were

"somewhat out-of-proportion to the medical findings, and generally not compatible or reasonably consistent with the medical evidence of record and all other evidence – and therefore not fully persuasive." (*Id.*)

### i. *Physical Impairments*

The ALJ concluded that "due to a total lack of corroborating medical evidence, [Plaintiff's] allegations of totally disabling back impairments [were] not credible." (Tr. 28.) Plaintiff attacks this conclusion on appeal because medical evidence in the record did corroborate Plaintiff's allegations. (Dkt. No. 16 at 17.) For instance, a 2009 MRI confirmed bulging discs at the L3-L4, a possible annular tear at the T2, and "potential irritation" at the L3 nerve root. (Tr. 319.)

Plaintiff misapprehends the ALJ's statement on this issue. The ALJ never found a lack of corroboration for Plaintiff's back pain. In fact, the ALJ acknowledged the MRI showing bulging disks at the L3-L4. (*Id.* 28.) What the ALJ found lacked corroboration were Plaintiff's subjective allegations of "totally disabling" back problems.

The ALJ supported this latter finding with substantial evidence. The ALJ cited medical exams that "never seemed to demonstrate any measurable symptoms other than moderate tenderness to palpation in the lumbar spine" and emergency room visits where Plaintiff presented "some vague discomfort" and "unrelated, somewhat protean, complaints" about back pain. (Tr. 28.) *See* 20 C.F.R. § 404.1529(c)(4) ("We will consider . . . the extent to which there are conflicts between your statements and the rest of the evidence, including . . . laboratory findings, and statements by your treating or nontreating source . . . about how your symptoms affect you."). *See also Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (noting an ALJ may consider "the consistency or compatibility of nonmedical testimony with objective medical evidence" when assessing credibility).

### ii. Mental Impairments

As to mental limitations, the ALJ concluded that "the evidence of record [] fails to corroborate [Plaintiff's] allegations of totally disabling symptoms" of "severe social isolation and inability to get up out of bed." (Tr. 28.) To support this conclusion, the ALJ cited evidence that Plaintiff "frequently interacted with family (many of whom lived with her at times) and even went on trucking trips with her ex-husband . . . ." (*Id.* 29.)

On appeal, Plaintiff attacks the ALJ's credibility conclusion about Plaintiff's social isolation. Plaintiff claims the ALJ mischaracterized Plaintiff's family interactions as showing an ability to socially interact. (Dkt. No. 16 at 16-17.) Plaintiff's therapy notes demonstrate that Plaintiff experienced anxiety living with her siblings and never wanted to go on trucking trips with her ex-husband but found it impossible to express her true feelings (Tr. 427-29). (Dkt. No. 16 at 16.)

While the Court may have interpreted the evidence about Plaintiff's family interactions differently, on appeal, the only "question for this Court . . . is whether the ALJ articulated specific reasons, supported by substantial evidence" for her credibility finding. (Dkt. No. 17 at 21.) Putting aside the ALJ's references to Plaintiff's family interactions, the ALJ provided other specific reasons supported by substantial evidence to discount Plaintiff's allegations of totally disabling social isolation. For instance, the ALJ cited Plaintiff's therapy notes (Tr. 359-63, 425-39) to conclude that Plaintiff "appeared to do fairly well, except when she was presented with increased stressors in her life" such as separation from her husband, eviction, as well as financial and family struggles. (Tr. 28.)

## VII. ORDERS

For the reasons analyzed above, this Court **AFFIRMS** the Commissioner's decision to deny Plaintiff social security disability benefits.

Dated this 5th day of September, 2014.

By the Court:

DUSTIN PEAD
United States Magistrate Judge